Charles A. and Eileen B. Bane v. Commissioner.
Bane v. Commissioner
Docket No. 1616-67.
United States Tax Court
T.C. Memo 1971-31; 1971 Tax Ct. Memo LEXIS 302; 30 T.C.M. (CCH) 125; T.C.M. (RIA) 71031; February 11, 1971, Filed *302 Petitioner, an attorney, claimed substantial deductions for entertainment and business gifts. Held: (1) He cannot subpoena the tax returns of other attorneys because he has not shown that such returns would be relevant; and (2) He has failed to substantiate his alleged expenditures for entertainment and business gifts in the manner required by sec. 274(d), I.R.C. 1954, and failed to prove that his expenditures for entertainment were directly related to or associated with his business within the meaning of sec. 274(a), I.R.C. 1954. Charles A. Bane, pro se, Rt. 2, Waynesboro, Va.Lewis M. Porter, Jr., for the respondent. SIMPSON
Memorandum Findings of Fact and Opinion SIMPSON, Judge: The respondent determined deficiencies in the income tax of the petitioners of $980.63 for 1962 and $10,958.93 for 1963 and an addition to tax for negligence under section 6653(a) of the Internal Revenue Code of 1954[1] of $547.95 for 1963. The issues for decision are: (1) Whether amounts claimed by the petitioners in 1963 as unreimbursed entertainment, gift, and promotional expenses were allowable deductions; (2) whether the law firm of which the petitioner, Charles A. Bane, was a member was entitled to deduct certain amounts paid in the years 1962 and 1963 for furniture, equipment, and improvements; and (3) whether any part of the underpayment of tax for the year 1963 was the result of negligence or intentional disregard of rules and regulations. *306 Findings of Fact Some of the facts have been stipulated, and those facts are so found. The petitioners, Charles A. and Eileen B. Bane, are husband and wife, who resided in Chicago, Illinois, at the time of filing the petition in this case. The petitioners filed their joint 1962 and 1963 Federal income tax returns with the district director of internal revenue, Chicago, Illinois. Mr. Bane will be referred to as the petitioner. During the taxable years 1962 and 1963, the petitioner was a lawyer and a senior partner and member of the executive committee of the law firm of Isham, Lincoln 126 & Beale (the firm) in Chicago, Illinois. During those years, the firm filed United States Partnership Returns of Income (Form 1065) with the district director of internal revenue, Chicago, Illinois. The firm used the cash receipts and disbursements method of accounting and filed its returns for those years on a calendar year basis. In 1962 and 1963, the firm remodeled and refurnished certain office space. In 1962, room 1725, which had included two offices and a reception area, was remodeled to make it into a conference room. Paritions were removed; the room was redecorated; and tables *307 and chairs were placed therein. In 1963, the firm acquired additional space - rooms 1732-1736 and 1741-1748, which were remodeled for use as offices for lawyers and secretaries. Partitions and light fixtures were installed; and desks for attorneys and secretaries, chairs, tables, letter trays, blotter pads, credenzas, bookcases, typewriters, and carpeting were purchased. The useful life of each item of furniture, equipment, and improvement involved in the remodeling of the rooms in issue was in excess of 1 year. On its 1962 and 1963 returns, the firm, consistent with its practice of many years, claimed as deductions for current operating expenses amounts which included the costs of remodeling and refurnishing room 1725 and the firm's share of the costs of remodeling and refurnishing rooms 1732-1736 and 1741-1748. The respondent determined that the costs of remodeling the rooms and the costs of furniture and equipment represented capital expenditures and were not deductible. However, he also determined that deductions for depreciation and amortization were allowable to the firm for the taxable years 1962 and 1963 with respect to the remodeling and refurnishing of the rooms. As a *308 result of this adjustment, the respondent increased the petitioner's share of partnership income by $2,415.90 for 1962 and $3,238.06 for 1963 and determined deficiencies accordingly. On their 1963 return, the petitioners claimed deductions of $15,988.27, consisting of $12,047.45 for entertainment and $3,940.82 for gifts and promotional expenses. To substantiate such deductions, the petitioner submitted as evidence his testimony at trial and documents consisting of a pocket diary, a desk calendar, check registers, cancelled checks, monthly statements of account of various creditors, and worksheets prepared by him after the close of the taxable year. We do not consider such worksheets to constitute records for purposes of the requirements of section 274(d). In computing the deductions claimed for entertainment, gift, and promotional expenses, and in preparing the return for 1963, the petitioner followed the same practices as he had followed in prior years. The petitioner claimed deductions for the expenses of entertaining in his home. His pocket diary contained the dates of scheduled functions *309 to be held in his home and the name of a guest for whom the entertainment was to be held. The petitioner determined that 48 of such functions were related to his business and claimed deductions for the expenses of them, but he recognized that other scheduled functions were personal. In connection with the home functions which he treated as related to his business, the petitioner divided them into small (8-10 persons), medium (10-20 persons), and large functions (20-250 persons); and he estimated the cost of help to be $45 for a small function, $85 for a medium function, and $150 for a large function. According to his testimony, such help was paid in cash, and he had no records to substantiate such payments. He claimed a deduction for the amount of such estimated payments. However, he also submitted certain cancelled checks, which he also deducted as a part of the expenses for help at the home functions. The petitioner's deductions for home entertainment included the amounts paid certain florists and the amounts paid during 1963 to certain caterers and certain suppliers of beverages. His records include the bills submitted to him by such caterers, florists, and suppliers of beverages *310 and his cancelled checks to such persons, but such records do not reveal the amounts paid for each function, the time of the function, or its location. The petitioner's pocket diary reflects the name of the honored guest, but contains no information as to the cost of each function, its business purpose, the names of the other persons entertained, or the business relationship to the petitioner of those entertained; nor is such information included in any other record maintained by him. He testified that the New Year's Day party at his home was for the entertainment of members of the bar, judges, clients, and prospective clients. He also testified as to his 127 reason for arranging the entertainment of the honored guests on the other occasions. Some of them were representatives of foreign governments, and the petitioner stated that they were entertained because he wished to establish an international law practice. Other guests included individuals who were clients of his firm and individuals whom he hoped to obtain as clients. However, in none of his records or his testimony is there any information as to whether any business was discussed with the clients, potential clients, or *311 other individuals; nor is there any information as to whether the circumstances surrounding the home functions were conducive to the discussion of business. In his testimony, the petitioner failed to supply information as to the cost of each function or the names of the other individuals entertained. As a part of his entertainment expenses, the petitioner deducted the amounts that he paid to the Tavern Club, the Saddle & Cycle Club, the Casino Club, the Gaslight Club, the Conrad Hilton Hotel, the Edgewater Beach Hotel, the Commonwealth Edison lunch room, and the Chicago Drama League. The amounts paid to the clubs included both annual dues and charges for services. He submitted cancelled checks to establish that he made such payments. He also submitted statements in connection with some of such expenditures, but those statements show merely the time and the amount of the charges, but not the persons entertained. On his desk calendar, the petitioner noted the names of certain persons with whom he was to have lunch on some occasions, but there was no record made as to the purpose of the luncheon or the relationship of any such person to the petitioner; nor is such information included *312 in any other record maintained by him. In his testimony, the petitioner did indicate the relationships of some of such persons. In a few cases, such person was a lawyer with whom the petitioner was working at the time. On several occasions, the persons were clients or potential clients of the firm, but there is no evidence that business was considered at the luncheon. On other occasions, they were persons with whom the petitioner had or expected to have business dealings, such as the Chairman of the Illinois Commerce Commission and the man who was expected to be appointed the British Consul General. Neither the desk calendar, the pocket dairy, nor the petitioner's testimony reveals the amounts spent on each occasion, or on a number of occasions, where the luncheon took place. The petitioner's desk calendar contained a number of notations which, according to his testimony, indicated that he had conferences on certain days with groups of lawyers from out of town who were in Chicago to discuss certain antitrust litigation on which they were working with him. He also testified that on such days, he took the group to lunch. In one such instance, the petitioner testified as to the business *313 title and business relationship to the petitioner of certain individuals named on his desk calendar. But he did not give any information concerning the amount spent for such luncheon or where it was held. With respect to the other days on which the petitioner testified that he took members of the group to lunch, there is no evidence as to the names or number of individuals at such luncheons, where they lunched, or the amount spent on each occasion. The petitioner testified that he incurred expenses in connection with certain luncheons sponsored by him at the Conrad Hilton during the annual meeting of the American Bar Assoication that summer, and that he entertained certain out-of-town lawyers with whom he did business or expected to do business. However, there is no evidence as to the names or the number of persons entertained, and the statements from the Conrad Hilton reflect charges incurred in 1962. He also testified that the expenditures at the Commonwealth Edison lunch room covered the cost of a luncheon which he had with employees of Common-wealth Edison with whom he worked, but there is no evidence as to the individuals entertained or the business discussed. Although the *314 petitioner testified that he used the Tavern Club, the Saddle & Cycle Club, and the Casino Club as luncheon clubs for business purposes, the evidence indicates that he did use them on some personal occasions, and there is no evidence from which it can be determined whether they were used primarily for business or personal purposes; he testified that such clubs were not solely luncheon clubs. Also, there is no evidence that the Gaslight Club or the membership in the Chicago Drama League were used for business purposes; nor is there any evidence as to the purpose for the expenditure at the Edgewater Beach Hotel. As gift and promotional expenses, the petitioner deducted amounts paid to 128 Spaulding & Company, Marshall Field & Company, Harry J. Baby Company, Saks Fifth Avenue, Metcalfs, Guthman Photographers, Lackritz Jewelers, the Quadrangle Club, and certain florists. He submitted cancelled checks showing that he did make such payments. He also submitted statements furnished him by some of such establishments, but except for the Spaulding statement, they showed merely the amount of the charges and in some cases the items purchased and a date, although it is not clear whether it *315 is the date of the charge or the date of posting the entry. The Spaulding statement did include a name in connection with some items, and in his testimony, the petitioner explained that such name was the family name of the person receiving the gift, and, in some cases, described his relationship to the family. The petitioner also testified that items purchased from Marshall Filed, Saks Fifth Avenue New York, and others were given to the members of the families of persons with whom he did business or hopped to do business. Although he deducted $1,318.52 paid to Saks Fifth Avenue Chicago, he now admits that such amounts were expended for personal purposes. According to his testimony, the payment to the Quadrangle Club was to cover the expenses of a reunion of Oxford and Cambridge graduates. He testified that the participants were not clients but that they were men of importance and standing. He gave the names of two of them, but there is no evidence as to the other participants. He also deducted as gifts and promotional expenses $78.83 with respect to which there is no evidence as to the payee or the purpose of such expenditure. On their 1963 return, the petitioners claimed a deduction *316 for automobile expenses, of which the respondent disallowed $665.44; the petitioners now concede the correctness of that adjustment. In his notice of deficiency, the respondent disallowed the deductions for entertainment, gifts, or promotional expenses, except for $300 for entertainment expenses and $275 for gifts. The petitioner now concedes that 10 percent of the expenses for catering and beverages for which he claimed deductions were properly attributable to personal entertainment. The policy of the firm was not to reimburse its partners for the costs of entertainment, gifts, or promotional expenses. The petitioner's share of the firm's profits increased during the years 1962, 1963, and 1964 - $61,339.15 for 1962, $81,068.88 for 1963, and $103,674.33 for 1964. Opinion Subpoena of tax Returns Before dealing with the substantive issues, let us dispose of a procedural matter. Prior to the trial in this case, the petitioner caused a subpoena duces tecum to be served on the respondent commanding production of the partnership returns of eleven Chicago law firms and the individual returns of one or more partners of each of these firms. He contended that these eleven firms are *317 comparable to Isham, Lincoln & Beale, and that each of the individuals whose return was subpoenaed is in a position in his firm analogous to the petitioner's position in Isham, Lincoln & Beale. He asserted that information in the subpoenaed returns supports his position that Isham, Lincoln & Beale's expenditures for improvements and equipment were current expenses, and that his own expenditures for entertainment, promotion, and gifts are properly deductible as trade or business expenses. Additionally, he stated that the subpoenaed returns are necessary to establish whether the respondent has discriminated against the petitioners by his determination in this case. At the trial, the respondent moved to quash the subpoena. Section 6103 restricts the persons to whom and the conditions under which tax returns may be disclosed, and section 7213 makes it a crime for any employee of the Government to disclose a return "except as provided by law." However, *318 the subpoena duces tecum is a valid process of this Court permitting a party to obtain documentary proof supporting his case. Sec. 7456; Rule 44, Tax Court Rules of Practice. When a court orders an employee of the Government to produce tax returns, he is required to do so, for he is then acting "as provided by law." Blair v. Oesterlein Machine Co., 275 U.S. 220 (1927). Yet, no evidence may be subpoenaed unless there is a showing that it is relevant. Hamilton Web Co., 10 B.R.A. 939, 941 (1928). For this purpose, evidence is relevant when it is likely to be useful in the case. Boeing Airplane Company v. Coggeshall, 280 F. 2d 654, 658-659 (C.A.D.C. 1960). However, fishing excursions are not encouraged, and for production to be ordered, it must appear that there is a realistic expectation rather than an idle hope that the 129 evidence obtained will be relevant. See United States v. Harrington, 388 F. 2d 520 (C.A. 2, 1968); William O'Dwyer, 28 T.C. 698, 703 (1957), *319 affd. 266 F. 2d 575 (C.A. 4, 1959), cert. denied 361 U.S. 862 (1959). When the subpoenaed evidence consists of confidential information relating to parties who are not interested in the litigation, the courts should be especially careful to require a showing of relevancy. See United States v. Harrington. A tax return may contain a great deal of intimate information about the personal affairs or business of the taxpayer, and such information is furnished under compulsion of law and with the understanding that it will be treated as confidential. Moreover, when third party returns are requested, the party supplying the information is not ordinarily before the Court. Under those circumstances, the Court must assume the responsibility of protecting the interests of the third party taxpayer, and the Court should not compel the production of his confidential information, in the absence of a clear showing that justice requires its production. Since the petitioner did not establish that the subpoenaed returns met this test of relevancy, we concluded that the subpoena must *320 be quashed. The petitioner utterly failed to establish the grounds which led him to believe that the subpoenaed returns would contain relevant information. He did not state with particularity what information he expected to secure. Even if the returns showed that other law firms in Chicago were also deducting the costs of remodeling, improvements, and furniture, such information would not be helpful to the petitioner. A showing that other taxpayers followed an improper practice does not give the petitioner any right to follow such a practice. See sec. 1.446-1(a)(4)(ii), Income Tax Regs.; Schlude v. Commissioner, 372 U.S. 128 (1963); Old Colony R. Co. v. Commissioner, 284 U.S. 552 (1932). Similarly, even if the returns showed the amounts deducted by other lawyers for entertainment, gifts, and promotion, such information would not be helpful in this case, since the returns would not establish whether the taxpayer maintained adequate records to substantiate such deductions; nor would the returns show the relationship between such expenditures *321 and the business of the taxpayer. In addition, the returns would not indicate whether the respondent had disputed any of the deductions claimed with respect to them, and therefore, the returns could not assist the petitioner in his charge of discrimination. In these circumstances, there is no justification for requiring the production of tax returns containing confidential information submitted to the Government by other lawyers, who are competitors of the petitioner. See Shakespeare Company v. United States, 389 F. 2d 772 (Ct. Cl. 1968); William O'Dwyer, supra. The petitioner also contended that the "Freedom of Information Act," 5 U.S.C. sec. 552 (1966), gives him the right to subpoena third party tax returns merely by a showing of "some basis" for wanting such returns. The Act provides that members of the public, upon proper request, may inspect all Government records, with certain exceptions. The district courts are given jurisdiction to enjoin any agency from unjustifiably withholding properly requested records. The parties have spent *322 a good deal of time arguing whether the Act exempts tax returns from its application. We need not answer that question, for it is clear that such Act does not affect the scope of a subpoena issued by this Court. Under section 7456, this Court is given the power, for the efficient administration of the functions vested in it, to issue subpoenas requiring the attendance of witnesses and the production of necessary evidence. Those functions do not include the enforcement of the Freedom of Information Act. That Act places such jurisdiction in the district courts. Thus, it does not bring within the scope of our subpoena power evidence that is not otherwise subject to subpoena. A subpoena of this Court must still be confined to evidence that appears to be relevant to a case pending before us. See Shakespeare Company v. United States, supra.
Deductibility of Expenditures for Entertainment, Gifts, and Promotion of Business The principal issue in the case involves the deductibility of the petitioner's expenditures for entertainment, gifts, and promotion of business. The respondent *323 contends that such expenses are not ordinary and necessary within the meaning of section 162, are not directly related to or associated with the petitioner's business within the meaning of section 274(a), and are not substantiated in the manner required by section 274(d). Since we have concluded that the issue can be disposed of by a consideration 130 of the provisions of section 274, we need not deal with the applicability of section 162. Several provisions of section 274 are pertinent in this case. Section 274(a)(1) provides: (1) In general. - No deduction otherwise allowable under this chapter shall be allowed for any item - (A) Activity. - With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or *324 business, or (B) Facility. - With respect to a facility used in connection with an activity referred to in subparagraph (A), unless the taxpayer establishes that the facility was used primarily for the furtherance of the taxpayer's trade or business and that the item was directly related to the active conduct of such trade or business, and such deductions shall in no event exceed the portion of such item directly related to, or, in the case of an item described in subparagraph (A) directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), the portion of such item associated with, the active conduct of the taxpayer's trade or business. Section 274(b) limits to $25 a deduction for a business gift of the type involved in this case. Under section 274(d): (d) Substantiation Required. - No deduction shall be allowed - * * * (2) For any item with respect to an activity which is of a type generally considered to constitute *325 entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) For any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer, of persons entertained, using the facility, or receiving the gift. * * * Section 274(e)(1) provides that the rules of section 274(a) are not applicable to: (1) Business meals. - Expenses for food and beverages furnished to any individual under circumstances which (taking into account the surroundings in which furnished, the taxpayer's trade, business, or income-producing activity and the relationship to such trade, business, or activity of the persons to whom the food and beverages are furnished) are of a type generally considered to be conducive *326 to a business discussion. By the enactment of section 274, the rules governing the deductibility of expenditures for entertainment and gifts were changed significantly; and the petitioner has the burden of proving that his expenditures are deductible under the new provisions. [2]William F. Sanford, 50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (C.A. 2, 1969), cert. denied 396 U.S. 841 (1969). Under the new rules, a taxpayer's oral testimony is insufficient alone to support a deduction for entertainment or a gift. John L. Ashby, 50 T.C. 409 (1968). Proof, which might have been sufficient to justify deductions under the former law, may not be sufficient to support them in 1963 and later years. John Robinson, 51 T.C. 520 (1968), affd. per curiam on this issue 422 F. 2d 873 (C.A. 9, 1970). Under the Cohan rule 39 F. 2d 540 (C.A. 2, 1930)), the Court was required to estimate the amount of allowable *327 deductions when it was convinced that the taxpayer had shown that he was entitled to some deductions; but since the enactment of section 274, the Cohan rule is no longer applicable to expenditures for entertainment or gifts, and if such an expenditure is not substantiated in the manner required by that provision, no deduction for it is allowable. William F. Sanford, supra.The petitioner argues that the entertaining and gifts were related to his business because they led to his receiving additional distributions from the partnership each year, but even if the petitioner established the existence of such a relationship, it would not be sufficient to justify 131 a deduction for his expenditures for entertainment and gifts, if those expenditures are not substantiated in the manner required by section 274(d) or are not directly related to or associated with his business within the meaning of section 274(a). Steel v. Commissioner, 437 F. 2d 71 (C.A. 2, Jan. 18, 1971), *328 affg. per curiam a Memorandum Opinion of this Court. The petitioner suggested that his entertaining may not have been of the type contemplated by section 274, but in our opinion, it is clear that the rules of section 274 are applicable to his expenditures for entertainment and gifts. Steel v. Commissioner, supra; Wm. Andress, Jr., 51 T.C. 863 (1969), affd. per curiam 423 F. 2d 679 (C.A. 5, 1970). The respondent allowed deductions of $300 for entertainment and $275 for gifts; and the petitioners have failed to prove that they are entitled to any more. Under the statute, the petitioner must either by adequate records or by other sufficient evidence corroborating his own statement prove certain elements *329 with respect to an expenditure for entertainment or a gift. Shortly after the enactment of section 274, the respondent issued extensive regulations interpreting and applying the statutory provisions - section 1.274-5, Income Tax Regs., relating to the substantiation requirements, was issued on December 27, 1962. According to those regulations, to maintain the "adequate records" required by section 274(d), An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure. * * * Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for - (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more * * * If a taxpayer lacks adequate records, the regulations require him to substantiate each element of an expenditure (i) By his own statement in writing containing specific information in detail as to *330 such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. * * * Those regulations have been approved by this Court on several occasions. Wm. Andress, Jr., supra; William F. Sanford, supra; John L. Ashby, supra. The Court of Appeals for the Second Circuit has recently held the regulations to be invalid and allowed a deduction for entertainment when it was supported by the oral testimony of the taxpayer and corroborative testimony by another witness. Harry G. LaForge v. Commissioner, 434 F. 2d 370 (C.A. 2, Nov. 10, 1970), remg. 53 T.C. 41 (1969). However, in this case, we need not comment upon the effect of the LaForge decision, for the petitioners have failed to prove the elements required by section *331 274(d) to be established with respect to their expenditures for entertainment and gifts, even when we take into consideration the testimony of the petitioner. In connection with the alleged expenditures for home entertainment, a substantial part of them was based upon an estimate. The petitioner admitted that his deduction for help at the home functions was determined by estimating the costs of help by reference to the size of the function. Clearly, such estimates are not deductible under section 274. Delores Bussabarger, 52 T.C. 819 (1969); B. J. Culwell v. Coard, an unreported case ( D.N. Mex. 1967, 19 A.F.T.R. 2d 1697, 67-2 USTC 9508). Obviously, since the petitioner admitted that such deductions were based upon estimates, he has no record or corrobative evidence to establish the fact that such payments were made. Indeed, the evidence suggests that the lack of records with respect to the amount of payment for help for the home functions may have led to some confusion and the claiming of duplicate deductions for the same expenditures. The petitioner submitted several checks to named individuals, and by stipulation it was agreed that these checks were *332 included as a part of the deduction for catering services; nevertheless, he also claimed a deduction for home entertainment in connection with the American Bar Association meeting in Chicago, without 132 adequate records to substantiate that deduction, and there is some reason to believe that the gross amount which he treated as the cost of such entertainment included the same payments to the named individuals - the checks were on the same day, and the amount of the checks coincided with amounts included in the American Bar Association claim. There is no evidence as to the amount spent for each of the home functions. All we have are certain bills received from caterers, florists, and suppliers of beverages. There is no allocation of these amounts to particular functions. Furthermore, it appears that these amounts may constitute the total amounts paid by the petitioner for catering and beverages in 1963. Although he testified that he and his wife did not drink, he did admit that they had some home entertainment which was for personal purposes. In recognition of this fact, he now concedes that some of the expenditures for catering and beverages were personal, and he suggests an *333 adjustment of 10 percent. However, in view of the lack of records and precise evidence, we have no way of knowing whether such an adjustment would be appropriate. The petitioner did not even testify as to the amount spent for each of the home functions. In view of the lack of evidence, there is no way of reliably determining the costs properly allocable to each function; accordingly, even if the petitioner were able to establish the business purpose and business relationship with respect to some of the functions, it would be impossible to determine the deductible amount. The evidence as to business purpose of the home functions and the business relationship of those entertained is also entirely inadequate. The petitioner's records contained no information as to the business purpose of these functions. His pocket diary did disclose the name of the honored guest, but there is no evidence as to the names of the other persons entertained at each of the functions. Although the petitioner testified as to his reason for entertaining the honored guest on a number of occasions, the evidence includes no reason for the entertainment of the other participants. In his brief, the petitioner argues *334 that the other guests were selected to please the honored guest. However, according to the committee report: Under this rule, if a taxpayer entertains a group of 10 individuals, 3 of whom are business prospects and 7 of whom are social guests, deduction will be allowed under the bill only for three-tenths of expenses incurred. Since the taxpayer's motive is not relevant to this determination, it would make no difference that the taxpayer in the above example would not have done the entertaining but for the attendance of the three business-related guests. Thus, as a result of section 274, the petitioner can deduct only the costs of entertaining those persons with whom he had a business relationship - the existence of some relationship between the other participants and the honored guest (except for his spouse) is irrelevant for purposes of section 274. Without evidence as to the number of people present, and without evidence as to whether there was a business relationship between the petitioner and the other participants, there is no way of knowing how many of the participants were entertained *335 for business purposes and what portion of the expenditures should be allocated to their entertainment. Hence, the petitioner has failed to prove that he is entitled to a deduction for the entire amount spent for the function. In like manner, the substantiation of the claimed expenditures for other entertainment is fragmentary and inadequate. In connection with the luncheons, the record evidence appears in the petitioner's desk calendar, diary, check registers, cancelled checks, and the statements of the clubs; but this evidence, even when taken together, does not establish the necessary elements. Although the desk calendar or diary may include the name of a person with whom the petitioner was to have lunch, they contain no information as to the amount spent for the luncheon, and in most cases, the place of the luncheon; nor do they contain any statements as to the business purpose or business relationship between the petitioner and the person entertained. The statements from the clubs do include information as to the dates and amounts of charges incurred by the petitioner, but the petitioner failed to establish the relationship between that information and the scheduled luncheons *336 reflected in his desk calendar or diary; that is, he did not connect up a scheduled luncheon with any of the charges reflected in the statements. The cancelled checks and check 133 registers show merely the payment of aggregate amounts to the clubs. Thus, the petitioner's records fail to show the basic elements of amount and place of the luncheons. Moreover, the petitioner's testimony failed to provide such detailed information with respect to such elements of expenditures. In his testimony, the petitioner did attempt to provide information concerning the business purpose or the business relationship of the luncheons. However, his statements were general. He described the relationship in such general terms as that the person was a member of an out-of-town firm for whom the petitioner's firm often performed work in the Chicago area, or that the person was Chairman of the Illinois Commerce Commission before whom the petitioner made a number of appearances, or that the person was expected to be appointed the British Consul General and the petitioner hoped to develop an international law practice. *337 In no instance did the petitioner state what business matter was discussed or even that business was in fact discussed. The generalizations given by the petitioner are insufficient to establish the business purpose in the manner contemplated by section 274(d). William F. Sanford, supra.
For purposes of section 274, dues paid to a social club are treated as an expenditure for the maintenance of an entertainment facility. John L. Ashby, supra; sec. 274(a)(2); sec. 1.274-2(e)(3)(ii), Income Tax Regs. Such an expenditure is not deductible unless the taxpayer establishes that the facility was used primarily for business purposes. Sec. 274(a)(1)(B). The evidence submitted by the petitioner is entirely insufficient for us to determine whether the clubs were used primarily for such purposes. There is no evidence that memberships in the Gaslight Club or the Chicago Drama League were used for business purposes. As to the Tavern Club, the Saddle & Cycle Club, and the Casino Club, the petitioner testified that they were used for business luncheons, *338 but the evidence also indicates that they were used for some personal purposes. With this conflicting evidence, it is impossible to determine what was their primary use. In applying section 274, section 1.274-2(e)(3)(ii), Income Tax Regulations, provides that "clubs operated solely to provide lunches under circumstances of a type generally considered to be conducive to business discussion * * * will not be considered social clubs"; and the petitioner stated that he used them as luncheon clubs. However, he also admitted that they were not solely luncheon clubs, and the evidence does not show whether the circumstances were conducive to the conduct of business discussions during the luncheon period. Hence, the petitioner has failed to prove that the expenditures for the club dues were deductible because he has not shown that they were used primarily for business purposes or that they were not social clubs within the meaning of section 274. Similarly, the expenditure for *339 the entertainment at the Quadrangle Club is not properly substantiated. Except for the names of two of the participants, there is no evidence as to the number of people entertained or their names. Moreover, the petitioner's vague statement that the participants were men of importance and standing is too general to establish the business purpose or business relationship in the manner required by section 274(d). William F. Sanford, supra. The petitioner claimed deductions for alleged entertainment at the Conrad Hilton Hotel and the Edgewater Beach Hotel. Although he stated that the entertainment at the Conrad Hilton was in connection with the annual meeting of the American Bar Association in August 1963, the only statements from that hotel submitted by him reflected charges in the prior year. Furthermore, he provided no evidence as to the names or even the number of persons entertained and no specific evidence as to the business purpose or business relationship of those entertained. Similarly, there is no evidence as to the purpose for the expenditures at the Edgewater Beach Hotel. Although he testified that the charge at the Commonwealth Edison lunch room was incurred *340 because he paid for the luncheon of the Commonwealth Edison employees with whom he worked, he did not supply the names or number of the persons taken to lunch or the particular business reason for doing so. According to his testimony, the petitioner had a number of conferences during 1963 with groups of attorneys and other persons from out of town with whom he was working on certain antitrust litigation. The only information in his records relating to such conferences consisted of brief notes in his desk calendar, which he interpreted as indicating that he had conferences with such groups on such days. He testified that he always took the group to luncheon on a day when they had such a conference. 134 However, there is no evidence as to the amount spent on each occasion, and with one exception, no evidence as to the names or number of persons entertained. For the most part, the petitioner has also failed to furnish the necessary substantiation for the amounts which he deducted as gifts. The statement from Spaulding & Company does reflect the amount spent for each purchase, the item purchased, and in most instances, a name in connection with each item, and the petitioner did *341 testify as to the relationship of the named family to himself. Similar information was supplied with respect to certain purchases from florists. Since the respondent allowed deductions of $275 for gifts, that allowance is sufficient to cover the amounts spent with Spaulding & Company and such purchases from florists. However, the evidence with respect to the other alleged gifts is insufficient. In some instances, we have no evidence as to what was purchased; in other instances, although we know the item, we do not know what was done with it - whether a gift was made of it or whether it was used for some other purpose. In no instance do we know to whom the item was given or the particular business purpose of making a gift to the alleged donee. Again, the petitioner did offer the generalization that the gifts were made for business reasons, but such generalizations are inadequate to establish the business purpose under section 274(d). William F. Sanford, supra.In fact, the petitioner now admits that the items purchased from the Chicago store of Saks Fifth Avenue were not *342 used as business gifts but were personal purchases. In addition, the evidence casts some doubt upon whether the purchases from Guthman Photographers were for business purposes. They constituted pictures which were taken about the time of the announcement of the engagement of the petitioner's daughter, and copies of the pictures were furnished to both Chicago and New York newspapers. With the exception of the gifts purchased at Spaulding & Company and certain florists, the petitioners have totally failed to provide the required substantiation of the alleged gifts for which they claimed deductions. Not only have the petitioners failed to supply the required substantiation of their alleged expenditures for entertainment and gifts, but they have also failed to prove that the expenditures for entertainment meet the tests set forth in section 274(a). The petitioner claims that the home entertainment was for the purpose of establishing good will with clients, with persons whom he hoped to obtain as clients, or persons with whom he expected to have business relationships, but such a general purpose *343 does not qualify the expenditure as directly related to his business within the meaning of section 274(a)(1). Wm. Andress, Jr., supra; sec. 1.274-2(c)(3)(i), Income Tax Regs. The petitioner claimed that at each of the home functions, the honored guest was entertained for business purposes; there is no adequate evidence as to the reasons for entertaining the other persons, although the spouses of the petitioner and the honored guest might have been includable because of their relationships. Home entertainment may be considered directly related to the business of the taxpayer when it is done in a clear business setting ( sec. 1.274-2(c)(4), Income Tax Regs.); but the evidence does not establish that the entertainment by the petitioner took place under such circumstances. Clearly, his large functions could not qualify; moreover, the other functions apparently could not qualify because there was no evidence that business was or could have been discussed, and in view of the number of people present, in addition to the petitioner *344 and the honored guest, it appears that the circumstances would not be conducive to the discussion of business. Entertainment associated with a business is also deductible; however, according to the regulations, the expenditures for associated entertainment are deductible only if it directly precedes or follows a business discussion ( sec. 1.274-2(d), Income Tax Regs.), and the committee report provides that the costs of associated entertainment are deductible "only if the taxpayer demonstrates a clear business purpose and shows a reasonable expectation of deriving some income or other benefit to his business as a result of the expenditure." S. Rept. 1881, supra at 732. Since the petitioner has failed to prove that any business discussions took place, his expenditures for the home entertainment cannot qualify under the regulations, and since he has failed to prove that there was a reasonable expectation of deriving income or other benefit from the entertainment, the expenditures do not qualify under the test set forth in the committee report. The petitioner has *345 also failed to prove that the other expenditures for 135 entertainment were directly related to or associated with his business. For the expenditures for the luncheons to qualify, the petitioner would have to show that business was discussed or that the circumstances were suitable for the discussion of business, and the petitioner has failed to establish such facts. His generalizations are simply insufficient for purposes of section 274. Similarly, he failed to prove that his club dues were paid for facilities used primarily for business purposes. Costs of Remodeling The correctness of the respondent's adjustment increasing the petitioner's share of the firm's income depends upon whether the costs of remodeling certain offices used by the firm, including the costs of new furniture and other equipment purchased for such offices, are deductible or must be capitalized. Under section 162(a), the costs of repairs are deductible as ordinary and necessary expenses of a trade or business. Sec. 1.162-4, Income Tax Regs.; Illinois Merchants Trust Co., Executor, 4 B.T.A. 103 (1925). *346 On the other hand, capital expenditures are not deductible but must be capitalized. Sec. 263; sec. 1.263(a)-1, Income Tax Regs.; Illinois Merchants Trust Co., Executor, supra.Since the respondent has determined that the costs of remodeling the offices constituted capital expenditures, the petitioner has the burden of proving such determination to be incorrect; he has the burden of proving that the expenditures were for repairs. Challenge Manufacturing Co., 37 T.C. 650, 662 (1962); Gude Brothers, Kieffer Co., 2 B.T.A. 1029, 1030 (1925). In the regulations, the test for distinguishing repairs from capital expenditures is set forth in the following terms: The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as an expense * * *. Repairs in the nature of replacements, to the extent *347 that they arrest deterioration and appreciably prolong the life of the property, shall either be capitalized and depreciated in accordance with section 167 or charged against the depreciation reserve if such an account is kept. That statement of the test has long been approved by the courts. United States v. Wehrli, 400 F. 2d 686 (C.A. 10, 1968). In this case, the evidence shows that the expenditures were a part of a plan of general remodeling which altered the use of such space and the benefits of which extended beyond the year. In one instance, office space was converted into a conference room, and in the other situation, newly acquired space was remodeled so as to make it suitable as offices for attorneys and secretaries. Even though some of the expenditures might be treated as repairs, if they had occurred separately, they are treated as capital expenditures when they are part of a general plan of renovation. I. M. Cowell, 18 B.T.A. 997 (1930). Moreover, the petitioner's witness testified that the expected life of the items included in the remodeling *348 exceeded 1 year and that most of them were still in existence at the time of the trial. Oswego Falls Corporation, 46 B.T.A. 801 (1942), revd. on another issue 137 F. 2d 173 (C.A. 2, 1943). Under these circumstances, it seems clear that the expenditures for the remodeling were capital expenditures. The petitioner argues that because the firm treated the costs of remodeling in 1962 and 1963 in the same manner as it had treated similar expenditures in past years, because, according to him, the expenditures were relatively minor in amount and made no substantial difference in income from year to year either to the firm or to the partners individually, and because a change in the firm's accounting procedure would necessitate inconvenience and expense to the firm, the firm should be allowed to deduct the expenditures for the remodeling. However, the use of a clearly erroneous method in past years creates no right to continue to use such method. Sec. 1.446-1 (a)(4)(ii), Income Tax Regs.; Schlude v. Commissioner, 372 U.S. 128 (1963); *349 Old Colony R. Co. v. Commissioner, 284 U.S. 552 (1932). Nor does the inconvenience and expense of changing over to a proper method of accounting provide a right to continue to use a clearly erroneous method. All- Steel Equipment Inc., 54 T.C. 1749 (1970). Negligence Penalty The respondent determined that the petitioners were liable for the penalty under section 6653(a), relating to an underpayment of tax due to negligence or intentional disregard of rules and regulations. When the respondent makes such a determination, the petitioner ordinarily has the burden of 136 proving that the penalty is not applicable. Barton v. Commissioner, 424 F. 2d 1295 (C.A. 7, 1970), affg. per curiam a Memorandum Opinion of this Court. The petitioner contends that the respondent has shifted his position with a resulting shift in the burden of proof in this case, but we are not convinced by his argument. In the Answer, the respondent alleged that the petitioner was respondent alleged that the petitioner was negligent and failed to keep adequate records, and *350 in his brief, the respondent points to alleged errors in the petitioner's computation of his tax liability due to the failure to keep proper records. It appears to us that the mistakes made by the petitioner did result from his failure to keep proper records, and consequently, there was no shifting of position by the respondent. In our judgment, the petitioners had the burden of proving a lack of negligence and have failed to carry that burden. The petitioner argues that he kept the best records available in 1963, that the respondent failed to give adequate notice of the specific records that should be kept under section 274, and that any failure by him to maintain the specific records required by the regulations under section 274 was not negligence on his part. Although it appears to us that the petitioner could have kept much more revealing records and that he either knew or should have known of the new recordkeeping requirements, we need not decide whether his failure to maintain for 1963 the specific records required by section 274 and the regulations thereunder constituted a basis *351 for imposing the penalty under section 6653(a). Some of the errors made by the petitioner in the keeping of records and the preparation of his return constitute negligence even without taking into consideration the specific requirements of section 274 and the regulations thereunder, and when any part of an underpayment of tax is due to negligence, the penalty under section 6653(a) is applicable. James W. England, Jr., 34 T.C. 617 (1960). "Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Marcello v. Commissioner, 380 F. 2d 499, 506 (C.A. 5, 1967). There is an intentional disregard of rules and regulations "when a taxpayer who is aware or should be aware of a rule or regulation chooses to ignore its requirements." Ibid at 506. In speaking about a lawyer who also sought to deduct substantial expenditures for business entertainment, we said: The expenses in question are of such nature *352 as to afford considerable opportunity for abuse, and it is not too much to ask of a taxpayer seeking the benefit of such deductions that he offer not only reasonably satisfying proof that the expenses were in fact incurred but also that they bore a proximate relationship to the conduct of his business. * * * Thus, without regard to the specific requirements of section 274 and the regulations thereunder, the petitioner had a duty to maintain appropriate records to establish that he made the payments for which he claimed deductions and that such payments were made for business purposes. The failure to exercise due care in the maintenance of records sufficient to establish the taxpayer's income or claimed deductions is a basis for imposing the penalty under section 6653(a). Barry Meneguzzo, 43 T.C. 824 (1965); Leslie A. Sutor, 17 T.C. 64 (1951). As one of his bases for the penalty, the respondent suggests that the petitioner negligently claimed duplicate deductions for the amounts paid to certain individuals at some of the home functions. Although the evidence *353 strongly suggests that there were duplicate deductions claimed by the petitioner, his records were not clear enough to enable us to make such a finding; on the other hand, we cannot find that such deductions were not duplicated. An error resulted from the fact that the petitioner deducted the amounts which he paid during 1963 for beverages and to certain caterers, although he now admits that some of such amounts were not deductible because they should have been allocated to home functions which were admittedly personal; yet, the records kept by the petitioner provide no basis for determining what amounts are allocable to the home functions claimed to have a business purpose and to those admittedly personal. The most obvious and inexcusable mistake was the deduction of over $1,300 paid to Saks Fifth Avenue for purchases at the Chicago store. Again, if he had kept the appropriate records as to what was purchased and for what purpose, he would have known that such items were personal and should not be deducted. Claiming a deduction for such a large amount of 137 expenditures, which were without doubt not deductible, must be attributable to the petitioner's failure to use due care *354 in the maintenance of records and preparation of his return. Berkeley Machine Works & Foundry Co. v. Commissioner, 422 F. 2d 362 (C.A. 4, 1970), affg. per curiam a Memorandum Opinion of this Court, Fihe v. Commissioner, 265 F. 2d 511 (C.A. 9, 1958), affg. a Memorandum Opinion of this Court; James W. England, supra.The dearth of records kept by the petitioner makes this case distinguishable from John Robinson 51 T.C. 520 (1968), affd. per curiam on this issue 422 F. 2d 873 (C.A. 9, 1970). Alleged Procedural Irregularities The petitioner alleges that there were irregularities in the administrative procedures preceding the notice of deficiency issued by the respondent and contends that the respondent's determination should be set aside because of such irregularities. The petitioner claims that he was not provided a conference with the agent, that he was not furnished a legible copy of the agent's report, that the copy which was given him was untimely, and that the respondent has not explained his computation of the amounts which he allowed for entertainment and gift expenditures. However, these allegations, even *355 if true, do not provide a basis for invalidating the determination by the respondent. It has been held that a determination by the respondent will not be invalidated because of alleged irregularities in the administrative procedures occurring prior to the issuance of the notice of deficiency. Ben Perlmutter, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967); Charles Crowther, 28 T.C. 1293 (1957), affd. on this issue 269 F. 2d 292 (C.A. 9, 1959); Phillip F. Flynn, 40 T.C. 770 (1963); Cleveland Home Brewing Co., 1 B.T.A. 87 (1924). Furthermore, the petitioner has not shown that he was prejudiced in any way by the alleged defects in the administrative procedures. Irrespective of whether he was provided with the opportunity to have a conference with the agent, there were ample opportunities to confer with the representatives of the respondent and to consider settlement of the case prior to its trial; and there are no indications that the petitioner was not adequately informed as to the items disallowed *356 by the respondent. Also, it is difficult to see how the petitioner could be injured by the respondent's failure to explain how he computed the amounts which he would allow. Conclusion In conclusion, we hold that the petitioners have failed to prove that they are entitled to deduct any more of their expenditures for entertainment, gifts, and promotion of business than the respondent has allowed, have failed to prove that the respondent's adjustment with respect to the petitioner's share of partnership income was incorrect, and have failed to prove that the negligence penalty is not applicable. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. Apparently, some of the petitioner's entertainment and gift expenses were incurred in 1962 but paid in 1963. However, since it appears that the petitioners were using the cash method of accounting so that such expenses were deductible in 1963, if deductible at all, the rules of section 274↩ are applicable in determining their deductibility.