JERRY & PATRICIA A. DIXON, ET AL., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dixon v. Comm'r
Docket Nos. 9382-83, 10588-83, 17642-83, 17646-83, 27053-83, 4201-84, 10931-84, 15907-84, 20119-84, 28723-84, 38757-84, 38965-84, 40159-84, 22783-85, 30010-85, 30979-85, 29643-86, 35608-86, 13477-87, 479-89, 8070-90, 19464-92, 621-94, 7205-94, 9532-94, 17992-95, 17993-95, KERSTING United States Tax Court
2005 U.S. Tax Ct. LEXIS 13; March 23, 2005, Decided Dixon v. Commissioner, 2003 U.S. App. LEXIS 4831 (9th Cir. Cal., Jan. 17, 2003)
*13 Renato Beghe, Judge. Renato Beghe
ORDER
On March 14, 2005, respondent filed five motions in the above-numbered dockets, identified as follows:
1. Motion to quash subpoena served upon Attorney General Alberto R. Gonzales;
2. Motion to quash subpoena served upon former United States Department of Justice Tax Division Appellate Section ChiefGary R. Allen;
3. Motion to quash subpoena served upon Chief Counsel Donald Korb;
4. Motion to quash subpoena served upon former Chief Counsel B. John Williams; and
5. Motion for protective order.
Additionally, on the same date, counsel in the Tax Division in the United States Department of Justice filed two motions in the above-numbered dockets, as follows:
1. Attorney General Gonzales's motion to quash subpoena;
2. Gary R. Allen's motion to quash subpoena.
In an order entered the next day, the Court directed Mr. Binder to prepare responses to the above aforesaid motions; the Court filed those responses on March 21, 2005.
DISCUSSION
Rule 147(b) provides that this Court, upon receiving a motion, may quash or modify a subpoena if it is unreasonable and oppressive. A subpoena is unreasonable *14 or oppressive when it seeks evidence that is irrelevant to the issues before the Court. See Bane v. Commissioner,T.C. Memo. 1971-31, citing Hamilton Web Co. v. Commissioner,10 B.T.A. 939 (1928). Here, as in other cases, we agree with "the principal argument made by respondent in the motions to quash; viz., the testimony of the subpoenaed witnesses is irrelevant" to the Court's factual findings required by the mandate of the Court of Appeals for the Ninth Circuit. See Nis Family Trust v. Commissioner,115 T.C. 523, 551 (2000).
In these cases, the standards of relevance are derived from the opinion of the Court of Appeals in Dixon v. Commissioner,316 F.3d 1041 (9th Cir. 2003), as amended on March 18, 2003. Therein the Court of Appeals addressed the third version of a secret agreement that had been reached on or shortly before January 1989 by two of respondent's attorneys and counsel for John and Maydee Thompson, test case petitioners in a trial involving the validity of programs known as the Kersting tax shelters. Pursuant to the secret agreement, Mr. Thompson testified at trial on behalf of respondent, but neither *15 his counsel nor respondent's counsel revealed to the Court or to the other petitioners that the Thompsons had previously settled their cases on terms substantially more favorable than those offered to the other petitioners. On December 11, 1991, the Court issued its opinion in Dixon v. Commissioner,T.C. Memo. 1991-614, sustaining almost all of respondent's determinations that the Kersting programs in issue lacked merit for tax purposes. The Court entered decisions that were consistent with its opinion in the test cases during March 1992, and most of the other test case petitioners (but not Thompson) filed notices of appeal. Shortly thereafter, senior officials of the Internal Revenue Service and of its Office of Chief Counsel discovered the secret agreement in the Thompson case. They revealed the secret agreement to the Court in pleadings filed in June 1992. In those pleadings respondent sought to vacate this Court's entered decisions giving effect to the Thompson settlement. The Court denied respondent's motion to vacate. Several years of difficult and protracted litigation by the other Kersting investors followed, culminating in the opinion in Dixon, supra. *16 There the Court of Appeals held that the secret agreement constituted "fraud on the court" regardless of whether the petitioners in the other Kersting shelter cases had been prejudiced in the presentation of their cases or in the decision of the Tax Court on the merits. The Court of Appeals accordingly directed that terms equivalent to those provided to the Thompsons be extended to "appellants and all other taxpayers properly before the Court." Id. at 1047. The Court of Appeals left to this Court's discretion "the fashioning of judgments which, to the extent possible and practicable, should put these taxpayers in the same position as provided in the Thompson Settlement." Id. n. 11.
Petitioners now seek to use this Court's process to require the testimony and production of documents at the final hearing in these cases by senior officials in the executive branch of the Federal government. We decline to authorize that use, because the subpoenas will not produce evidence relevant to the resolution of the matters before us.
With respect to the subpoena served upon Attorney General Gonzales, petitioners seek documents or communication dated after May 22, 1992, from the files of *17 Gary R. Allen, the retired Chief of the Appellate Section of the Tax Division of the U.S. Department of Justice. Petitioners claim that "The relevance of Mr. Gonzales's testimony is that thirteen years ago the Department of Justice, in its capacity as appellate counsel for the Commissioner of Internal Revenue, and Mr. Gary R. Allen specifically, apparently advised that all taxpayers be given the terms of the Thompson settlement."
With respect to the subpoena served upon Mr. Allen personally, petitioners reiterate that "The relevance of Mr. Allen's testimony is that thirteen years ago the Department of Justice, in its capacity as appellate counsel for the Commissioner of Internal Revenue, and Mr. Allen specifically, advised that all taxpayers be given the terms of the Thompson settlement."
In the motions to quash the subpoenas served upon Attorney General Gonzales and Mr. Allen, respondent says "Mr. Binder wishes to question Mr. Allen about the legality, fairness, and wisdom of the Thompson settlement, matters not now at issue in determining the operative terms of the settlement." It appears to the undersigned, that respondent may have misinterpreted the subject matter of petitioners' *18 inquiry. To the undersigned, the subject matter of the testimony is more particularly directed to "wisdom, legality, and fairness" of respondent's position that the Thompson settlement is to be characterized as a 20-percent settlement plus the payment of the Thompsons' legal fees rather than as a 62-percent settlement, which defines the settlement in simple mathematical terms in accordance with its form--the reduction of the Thompsons' deficiencies from the $ 79,000, as originally determined by respondent, to the actual $ 30,000, representing a 62-percent reduction in deficiencies.
In any event, the Court believes that requiring the testimony of Mr. Allen would be unnecessary and burdensome. Mr. Allen had no part in negotiating the Thompson settlement; indeed, his association with these cases only began in 1992, long after respondent's counsel had made the secret agreement. Mr. Allen's involvement came about because he was Chief of the Appellate Section of the Tax Division of the United States Department of Justice. His section had responsibility for defending respondent in the Dixon petitioners' appeals, which were pending when the secret arrangements were discovered. From documents *19 already produced in discovery, it appears that, following the discovery and revelation of the secret agreement, Mr. Allen may have recommended that the pending appeals be resolved on the basis of a 65-percent reduction in the tax liabilities reflected in the decisions of this Court that had been appealed. [1] Respondent apparently refused to go along with a settlement on these terms.
The mandate of the Court of Appeals requires this Court to fashion "judgments *20 which, to the extent possible and practicable, should put these taxpayers in the same position as provided in the Thompson Settlement." The Thompson settlement was crafted and given effect well before the Department of Justice had any contact with it. The strategic factors which motivated Mr. Allen with respect to settling cases pending before the Court of Appeals do not equate to, and are distinct from, factors which this Court must consider in applying the mandate of the Court of Appeals. How his recommendations may appear in hindsight is irrelevant now. Mr. Allen's opinions were not and are not evidence of the scope of the Thompson settlement, and they are not relevant to the present task of this Court to determine the "position as provided in the Thompson settlement."
Petitioners also urge that respondent lacks standing to object to the subpoenas served upon Justice Department personnel; petitioners urge that arguments as to the relevance of evidence sought in the subpoenas served upon the Attorney General and Mr. Allen could only have been raised, but were not, by the Justice Department attorneys who filed motions to quash on behalf of the Attorney General and Mr. Allen. We disagree. *21 Our Rule 147(b) provides that we may quash a subpoena "on motion"; the rule does not restrict its operation to motions filed on behalf of the person served with the summons. Our discussion of the relevant case law, above, demonstrates that the lack of relevance is a proper ground for quashing a subpoena of this Court. If, as is the case here, a subpoena does not purport to produce relevant evidence, we will not require respondent to hold his objections as to relevance until the parties summoned have been forced to appear. Failure to permit respondent to make such an objection in a motion to quash--especially when compliance is demanded in a proceeding before this Court--would be unreasonable and oppressive, and contrary to the provisions of our Rule 147(b).
Concerning the subpoena served upon Chief Counsel Donald Korb, petitioners seek "All documents * * * relating to the statement of Mr. B. John Williams to the New York State Bar Association Tax Section of January 21, 2003, concerning Dixon v. Commissioner,316 F.3d 1041 (9th Cir. 2003) and specifically Mr. Williams's statement that: 'We will assure that no interest is charged on deficiencies for that period of the *22 appeals to the Ninth Circuit.'" With respect to the subpoena served upon Mr. Williams personally, respondent advises, "The testimony sought from Mr. Williams concern his statements to the New York State Bar Association Tax Section of January 21, 2003, concerning Dixon v. Commissioner,316 F.3d 1041 (9th Cir. 2003). Specifically, the testimony sought includes the basis and background of Mr. Williams's statement that: "We will assure that no interest is charged on deficiencies for the period of the appeals to the Ninth Circuit." Petitioners further contend that: "The relevance of Mr. Williams's testimony to this proceeding is that while Mr. Williams's statement concerning interest is the position taken by the Office of Chief Counsel in the present proceedings, it does not comport with the Ninth Circuit's ruling. In addition, the Tax Court has requested clarification of that court's jurisdiction with respect to interest."
Petitioners do not contend that their subpoenas to Mr. Korb or to Mr. Williams will produce any factual evidence regarding the Thompson settlement. Instead they seek information regarding Mr. Williams's assertion that respondent would not collect interest *23 for the period during which the cases involving the petitioner's deficiencies were before the Ninth Circuit. Mr. Williams's concession--which respondent has represented to the Court that it will honor--was not part of the "Thompson settlement". That concession was made apart from, and long after, the Thompson settlement. The facts concerning that concession are not now at issue, and hence, they are irrelevant to the task of this Court. We acknowledge that we have expressed serious concerns about our authority under the law to furnish any relief to the "taxpayers properly before the Court" by ordering any decrease in statutory interest. The question of this Court's authority to fashion relief in a manner that affects statutory interest, however, is not a factual matter, but rather a legal one. Requiring Mr. Williams to testify, or requiring the present Chief Counsel to produce papers regarding his concession, is not the proper means of addressing that legal question. The Court already has received the views, and will, solicit the further views of counsel for all sides to this dispute with respect to this legal matter, but the views of respondent's former Chief Counsel are irrelevant *24 to this determination.
In view of the foregoing, it is
ORDERED that respondent's motion to quash subpoena served upon Attorney General Alberto R. Gonzales is granted; it is further
ORDERED that respondent's motion to quash subpoena served upon former United States Department of Justice Tax Division Appellate Section ChiefGary R. Allen is granted; it is further
ORDERED that respondent's motion to quash subpoena served upon Chief Counsel Donald Korb is granted; it is further
ORDERED that respondent's motion to quash subpoena served upon former Chief Counsel B. John Williams is granted; and it is further
ORDERED that respondent's motion for protective order is granted to the extent that, without written order of the Court, the parties are not to cause service of subpoenas in the above-numbered dockets upon persons not identified in the parties' respective pretrial memoranda that have been provided to the Court pursuant to its Order dated February 9, 2005.
Additionally, with respect to the motions to quash filed in these cases by counsel in the Tax Division in the United States Department of Justice, it is
ORDERED that Attorney General Gonzales's motion to quash subpoena is denied *25 as moot. It is further
ORDERED that Gary R. Allen's motion to quash subpoena is denied as moot. It is further
ORDERED that, in addition to regular service, a copy of this order shall be served upon the following attorneys:
Michael J. Martineau, Esq.
On behalf of the Hon. Alberto R. Gonzales
U.S. Department of Justice
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Jason S. Zarin, Esq.
On behalf of Gary R. Allen, Esq.
U.S. Department of Justice
Tax Division
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Renato Beghe
Judge
Dated: Washington, D. C.
March 23, 2005 Footnotes
1. We observe that petitioners' contention that Mr. Allen advised that all taxpayers be given the terms of the Thompson settlement assumes the veracity of petitioners' view of the matter now being litigated. Neither this Court nor the Court of Appeals has defined the Thompson settlement in terms of a 65 (or 62) percent settlement; to the contrary, respondent maintains the at least plausible view that the Thompson settlement constituted a reduction of 20 percent in deficiencies plus reimbursement of attorney fees spent in defending the Kersting shelters.↩