JACK C. BRINSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brinson v. Commissioner
Docket No. 4871-77.
United States Tax Court
T.C. Memo 1981-671; 1981 Tax Ct. Memo LEXIS 70; 42 T.C.M. (CCH) 1712; T.C.M. (RIA) 81671; November 23, 1981. *70 (1) P, an 80-percent shareholder and officer in X, sold his shares with the assistance of H. Held, P may not deduct under either sec. 162 or 212, I.R.C. 1954, amounts paid to H incident to the sale. (2) P donated his interest in certain equipment to a medical school. Held, P may not deduct under sec. 170, I.R.C. 1954, any amount in excess of his cost as he failed to prove that the fair market value of such equipment exceeded his cost. (3) P claimed various expenses for travel, entertainment, gifts, and meals. Held, P may not deduct such expenses as he failed to meet the substantiation requirements of sec. 274, I.R.C. 1954. Jack C. Brinson, pro sec. Elsie Hall, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in the petitioner's Federal income taxes: Year
Deficiency
1972
$ 6,783.28
1973
10,349.99
1974
3,442.85
After certain concessions by the petitioner, the issues for decision are: (1) Whether certain payments made by the petitioner in 1972 and 1973 constitute consulting fees deductible under either section 162 or 212 of the Internal Revenue Code of 1954[1] or nondeductible commissions on the sale of securities; (2) whether the petitioner is entitled to deduct under section 170(a)(1) an amount in excess of that allowed by the Commissioner for certain equipment donated to the Indiana University School of Medicine in 1973; and (3) whether the petitioner has met the substantiation requirements of section 274(d) with respect to certain expenditures for travel, entertainment, gifts, and meals. FINDINGS OF FACT Some of *73 the facts have been stipulated, and those facts are so found. The petitioner, Jack C. Brinson, maintained his legal residence in Indianapolis, Inc., at the time he filed his petition in this case. During the taxable years 1972, 1973, and 1974, he was married and, together with his spouse, timely filed joint Federal income tax returns with the Internal Revenue Service. The petitioner has since been divorced, and his wife is not a party to this proceeding. The petitioner attended grade and high school in Versailles, Ind. After graduation from high school, he went to Purdue University where he received a bachelor of science degree in pharmacy in 1959. After a number of years of employment as a pharmacist, the petitioner returned to graduate school, earning a master's degree in business with a major in finance from Indiana University. Following receipt of such degree, he began working as a stockbroker. He worked as a stockbroker for a number of years, and thereafter he established his own investment counseling firm. Sometime during 1967 or 1968, the petitioner became acquainted with Larry J. Hannah, a financial officer at the American Fletcher National Bank (AFNB). As casual *74 acquaintances, the petitioner and Mr. Hannah engaged in discussions about the business of investing in small community banks in the State of Indiana. The petitioner developed an interest in buying a controlling interest in the Bank of Versailles (the bank) at this time as he had grown up in the area and his parents were on the board of directors of such bank. The petitioner engaged in a number of discussions with Mr. Hannah, regarding both the quality of such an investment and the financing that he would need to purchase a controlling interest in the bank. After a number of such discussions, the two men came to the conclusion that the bank was undermanaged and that the petitioner could build up the bank over a period of 18 to 36 months, after which time he would sell it. The petitioner applied for a large loan with AFNB for the purpose of purchasing stock in the bank. Mr. Hannah assisted in securing the approval of the petitioner's loan by AFNB. With the loan, the petitioner was able to acquire a controlling interest in the bank by the fall of 1970, purchasing over 80 percent, or 257 shares, for a total of $ 269,850, or $ 1,050 per share. At the time the petitioner acquired *75 his shares in the bank, there was no formal understanding between him and Mr. Hannah that Mr. Hannah would provide any type of services to him. Mr. Hannah was the head of the correspondent division of AFNB, and in that capacity, it was a part of his regular duties to assist correspondent banks, including the Bank of Versailles. Yet, while the petitioner owned the bank, Mr. Hannah furnished him a great deal of advice and assistance. On many occasions, the petitioner came to Indianapolis to seek such advice; on a few occasions, Mr. Hannah went to Versailles to assist the petitioner. As a financial consultant, Mr. Hannah provided similar services to a number of other banks during the same period of time. With these other banks, Mr. Hannah had formal contractual arrangements wherein he was paid at a fixed hourly rate and was paid directly by such banks. Sometime prior to October 6, 1972, the petitioner informed Mr. Hannah that he wished to sell his shares in the bank. Mr. Hannah told John M. House that the petitioner was interested in selling his stock in the bank and introduced him to the petitioner. After some negotiations between Mr. House and the petitioner, the petitioner *76 sold his 257 shares of stock in the bank to Mr. House on October 6, 1972, for $ 2,100 per share, or a total of $ 539,700. The petitioner received $ 20,000 in salary from the bank in 1972. Mr. Hannah left the employ of AFNB on October 15, 1972. Soon thereafter, his attorney prepared an agreement stating: COMMISSION AGREEMENT
WHEREAS, Jack C. Brinson, in October of 1970, purchased a majority of the issued and outstanding shares of The Bank of Varsailles, Versailles, Indiana, and WHEREAS, pursuant to said purchase Jack C. Brinson enlisted the services of Larry J. Hannah to provide counselling to Jack C. Brinson as to the operation and management of said Bank, and WHEREAS, as previously agreed by Jack C. Brinson and Larry J. Hannah, that upon the sale of said shares of stock owned by said Jack C. Brinson, that Jack C. Brinson would pay to Larry J. Hannah a sum equal to ten percent (10%) of the sale price of said stock for the services rendered by Larry J. Hannah, and WHEREAS, Larry J. Hannah during said period of time that Jack C. Brinson owned the majority of the issued and outstanding stock of said Bank did render service to Jack C. Brinson in the operation and management *77 of said Bank, and WHEREAS, Jack C. Brinson has entered into an installment sale of all of the shares of stock of the Bank of Versailles, Versailles, Indiana, owned by him for a total sales price of Five Hundred Thirty-Nine Thousand Seven Hundred Dollars ($ 539,700.00). NOW, THEREFORE, in consideration of the past services rendered by Larry J. Hannah and in compliance with the agreement of Jack C. Brinson and Larry J. Hannah, it is hereby agreed as follows: 1. Jack C. Brinson covenants and agrees to pay to Larry J. Hannah the following sums of money representing the commission due to Larry J. Hannah on the following dates and in the following amounts: (a) November 10, 1972
$ 15,540.00
(b) January 3, 1973
21,630.00
(c) February 23, 1973
16,800.00
$ 53,970.00
DATED THIS 10th DAY OF NOVEMBER, 1972. /s/ Jack C. Brinson / JACK C. BRINSON Thereafter, the petitioner made the following payments to Mr. Hannah pursuant to the agreement: Date
Amount
1972
$ 15,540
1/8/73
21,630
3/12/73
8,400
3/21/73
3,000
3/31/73
5,400
$ 53,970
On his returns for 1972 and 1973, the petitioner deducted all of his payments to Mr. Hannah as ordinary *78 and necessary business expenses, labeling such payments as "Brokers Commission." In his notice of deficiency, the Commissioner determined that none of such payments constituted ordinary and necessary expenses under either section 162 or 212. On or about June 22, 1973, the petitioner and an associate purchased all of the equipment of a dental facility for $ 10,500. The petitioner paid one-half of this amount, or $ 5,250. By letter dated December 28, 1973, the petitioner donated his interest in such equipment to the Indiana University School of Medicine. He estimated the value of his interest in such equipment to be $ 19,247 and claimed a deduction for that amount on his 1973 return. In his notice of deficiency, the Commissioner disallowed the amount claimed by the petitioner in excess of $ 5,250 on the ground that the petitioner had not established that the fair market value was in excess of the amount he paid for the property. From 1972 through 1974, the petitioner was a 50-percent shareholder in Jan-Brin Construction Company, Inc. (Ja-Brin). The petitioner received a salary of $ 18,000 from such company in 1974. He was also 1 of 13 stockholders in a local radio station, *79 WIFP. On his Federal income tax return for such years, he claimed that he incurred the following amounts as travel, entertainment, and other business expenses as a result of his interests in Ja-Brin, the radio station, and the bank: Year
Amount
1972
$ 3,413.10
1973
4,597.49
1974
2,488.61
In his notice of deficiency, the Commissioner disallowed all of such expenses on the grounds that the petitioner had failed to establish that they were ordinary and necessary expenses or that they were expended for the purposes designated. OPINION The first issue to be decided in this case is whether the payments of $ 15,540 in 1972 and $ 38,430 in 1973 to Mr. Hannah constitute deductible expenses of the petitioner under either section 162 or 212. The petitioner alleges that these payments were fees for consulting work which enabled him to improve operations at the Bank of Versailles and, as such, are deductible by him as an ordinary and necessary business expense under section 162. The Commissioner disagrees, arguing that such payments were in the nature of a commission on the sale of the petitioner's bank stock and, as such, were nondeductible capital expenditures. *80 The Commissioner relies on section 1.263(a)-2(e), Income Tax Regs., which provides, in part, that: Commissions paid in selling securities are an offset against the selling price, except that in the case of dealers in securities such commissions may be treated as an ordinary and necessary business expense. The petitioner bears the burden of disproving such determination. See Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933). The character of the arrangement between the petitioner and Mr. Hannah is vague and unclear. It is clear that there was no formal arrangement to compensate Mr. Hannah for his services, and the lack of any such formal arrangement explains the failure to keep any records of the time spent by Mr. Hannah advising the petitioner or of the nature of the services performed by Mr. Hannah. Additional uncertainty as to the arrangement is furnished by the statements of Mr. Hannah--at one time, he observed, "You know, I'm spending more time with you than I am with American Fletcher, *81 " but at another time, he said, "Jack, you can pay me or you don't have to pay me. I really don't care." Yet, when we review the entire record of the testimony of the petitioner and Mr. Hannah, some facts are clear: Mr. Hannah assisted the petitioner in deciding to acquire the controlling interest in the bank, and Mr. Hannah also played some role in helping the petitioner to sell his stock in the bank at a very handsome profit. Furthermore, though there is some dispute over the amount of assistance furnished by Mr. Hannah, it is clear that he went well beyond the duties required of him by his position with AFNB. Although Mr. Hannah and the petitioner understood that Mr. Hannah would not be compensated currently for his advice and assistance, we cannot believe that he furnished such services without some expectation of reward to be received at some time and in some manner. He knew that the petitioner expected to keep the bank for only a relatively short period of time and hoped to sell his interest at a substantial profit. It appears that Mr. Hannah probably expected that if his assistance contributed to the success of the bank, he could share in that profit. In substance, while *82 it appears that the petitioner and Mr. Hannah may have had some informal understanding which was later memorialized in the form of the agreement, we find that the petitioner has failed to carry his burden of proving that the payments to Mr. Hannah were not in the nature of a commission. Moreover, even if we were to find the services of Mr. Hannah to be in the nature of consulting, as the petitioner alleges, they would not constitute ordinary and necessary expenses of the petitioner under either section 162 or 212. It has been well established that the business of a corporation is not necessarily that of its shareholders even though all of its stock may be owned by a single shareholder. Deputy v. Dupont, 308 U.S. 488 (1940). Dupont set forth the general principle that expenses of a corporation paid by a shareholder are not ordinary and necessary expenses of the shareholder, but rather ordinary and necessary expenses of the corporation. In order for a taxpayer to be allowed a deduction under section 162, the expenditures must proximately result from the trade or *83 business of the taxpayer. Cf. Kaplan v. Commissioner, 21 T.C. 134 (1953). As a general rule, for tax purposes, a corporation is an entity entirely distinct from its shareholders. Dalton v. Bowers, 287 U.S. 404 (1932). One taxpayer may not take deductions belonging to another. Roach v. Commissioner, 20 B.T.A. 919 (1930). If any of the payments to Mr. Hannah were for consulting services, the services were furnished in the management of the affairs of the bank, and accordingly, the payment for such services was an expense of the bank, not of the petitioner. While the petitioner was an officer of the bank in 1972, any expenses for consulting services were not ordinary and necessary expenses of his position. The record reveals that the petitioner devoted much of his time to the bank during the 2-year period in which he was the controlling shareholder, but that fact does not entitle him to deduct the expense for consulting services. In Whipple v. Commissioner, 373 U.S. 193, 202 (1963), the Supreme Court observed that: *84 Devoting one's time and energies to the affairs of a corporation is not of itself, and without more, a trade or business of the person so engaged. Though such activities may produce income, profit or gain in the form of dividends or enhancement in the value of an investment, this return is distinctive to the process of investing and is generated by the successful operation of the corporation's business as distinguished from the trade or business of the taxpayer * * * The petitioner has failed to show that any consulting expenses were proximately related to his own trade or business of being a banking officer rather than to his status of a controlling stockholder. Thus, the petitioner may not deduct any amount of such expenses on his own personal income tax return under section 162. Any contentions that the fees for consulting services qualify under section 212 as expenses paid for the "production or collection of income" or for the "management, conservation or maintenance of property held for the production of income" are equally without merit. As said in Kaplan v. Commissioner, *85 "The statute contemplates the deduction of only such ordinary and necessary nontrade or nonbusiness expenses as are personal to the taxpayer. Only those expenses proximately and immediately relating to his own income or property are deductible." 21 T.C. at 146. See also Hewett v. Commissioner, 47 T.C. 483 (1967); Rand v. Commissioner, 35 T.C. 956 (1961). Any expenditure for consulting services was not directly or immediately related to the production or collection of the petitioner's income. Such services may have contributed to the success of the bank, but they did not directly affect the income of the petitioner. See Hewett v. Commissioner, supra; Kahn v. Commissioner, 26 T.C. 273 (1956). It is equally true that such expenditures by the Petitioner were not related to the "management, conservation or maintenance of property" held by the petitioner for the production of income. Sec. 212. The petitioner testified that he did not use bank funds to pay Mr. Hannah for consulting services to avoid imposing such burden on the resources of the bank and to gain the confidence of the other shareholders, *86 directors, and employees of the bank. However, if the petitioner secured the advice of Mr. Hannah for the benefit of the bank, the payment for his services was an expense of the bank deductible by it, but not by the petitioner. Moreover, in view of the increase in the business of the bank while under the management of the petitioner and the increase in the value of the stock of the bank, we cannot believe that the other shareholders would have objected to the payment of a consulting fee of $ 53,970. Accordingly, we hold that the petitioner was not entitled to deduct any part of the payments which he made to Mr. Hannah in 1972 and 1973. The second issue for decision is whether the petitioner is entitled to deduct any amounts in excess of his cost for certain equipment donated to the Indiana University School of Medicine. Section 170(a)(1) allows a deduction for any charitable contribution made in the taxable year. If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution. *87 Sec. 1.170A-1(c)(1), Income Tax Regs. Fair market value is defined as "the price at which the property would charge hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.
The determination of the fair market value is a question of fact to be resolved from a consideration of all relevant evidence in the record. See McGuire v. Commissioner, 44 T.C. 801, 807 (1965). The petitioner has the burden of proving that the fair market value of the property donate to the Indiana University School of Medicine exceeded $ 5,250, the amount determined by the Commissioner in his notice of deficiency. Rule 142(a), Tax Court Rules of Practice and Procedure; Wlch v. Helvering, 290 U.S. 111 (1933). "Cost, here, was cognet evidence of value." Tripp v. Commissioner, 337 F. 2d 432, 434 (7th Cir. 1964), affg. a Memorandum Opinion of this Court. The petitioner purchased the equipment approximately 6 months before he made the gift of it to the medical school, *88 and he has offered no evidence showing any reason for there to be any significant change in the value of the equipment during that period of time. The petitioner's own estimate of the value of the equipment, the fact that he had shopped for a microscope for his son, and the fact that he had bought furnishings for his home, is no real evidence of the value of the equipment and entirely insufficient to establish that its value exceeded its cost. Hence, we sustain the Commissioner's determination of the value of the contributions. The last issue for decision in this case is whether the petitioner is entitled to deduct certain expenses which he claimed were for business travel, entertainment, meals, and gifts. The Commissioner disallowed all of such expenses on the grounds that the petitioner had failed to show that they were ordinary and necessary expenses and that the petitioner had failed to substantiate them in accordance with the requirements of section 274. Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying *89 on any trade or business. However, section 274(d) imposes additional requirements for the substantiation of expenses for travel, entertainment, meals, and gifts. See Gilman v. Commissioner, 72 T.C. 730 (1979); Ashby v. Commissioner, 50 T.C. 409 (1968). Since the petitioner has failed to satisfy the substantiation requirements of section 274, we need not deal with the applicability of section 162 or 212. Section 274(d) requires that the taxpayer substantiate "by adequate records or by sufficient evidence corroborating his own statement" the amount of the expense, the time and place of the travel or entertainment, the business purpose of the expense, and the business relationship to the taxpayer of the persons entertained. Regulations promulgated pursuant to the statute provide that in order to meet the "adequate records" requirement, a taxpayer must maintain an account book, diary, statement of expense, or similar record prepared contemporaneously with the expenditure and documentary evidence, such as receipts or paid bills. These records must be sufficient *90 to establish each element--amount, time, place, business purpose, and business relationship--of an expenditure. Sec. 1.274-5(c), Income Tax Regs. This Court has sustained the validity of such regulations. Sanford v. Commissioner, 50 T.C. 823 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). In the absence of adequate records to substantiate each element of an expense, a taxpayer may alternatively establish such element: (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and
(ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph *91 (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. [Sec. 1.274-5(c)(3), Income Tax Regs.; emphasis supplied.] In enacting section 274, the intent of Congress was to "insure that no deduction is allowed solely on the basis of * * * [a taxpayer's] own unsupported, self-serving testimony." See S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 741. At trial, the petitioner introduced numerous documents, including checks, ticket stubs, credit card statements, restaurant receipts, and other stubs from various recreational activities. Some of these documents were sufficient to establish the time, place, and amount of the expenditure, but none of the documents recorded the business purpose of the expenditure nor the business relationship between the persons entertained and the petitioner. Moreover, the petitioner did not keep a diary or maintain any other contemporaneous record of the business purpose or business relationship relating to such expenditures. Thus, *92 he failed to qualify under the "adequate records" test of section 1.274-5(c)(2), Income Tax Regs.
The petitioner sought to justify the deduction of his expenses by relying on the alternative procedure. He undertook to testify as to the business purpose of the expenditures and the business relationship; however, much of his testimony was vague, and in no case did he have any evidence to corroborate his statements as to these elements. For example, the petitioner introduced many checks made out to the Indiana Pacers. While we do not doubt that these checks were for tickets to basketball games, the petitioner made no showing of the business purpose of each of these expenditures, i.e., the business benefits derived or expected to be derived as a result of this entertainment or the nature of any business discussions engaged in. See Randall v. Commissioner, 56 T.C. 869 (1971). The petitioner introduced numerous restaurant receipts and claimed that such were deductible as business meals. We disagree. While all of these receipts contained the amount of the bill, many of them failed to state the name of the restaurant or the date of the *93 expenditure. [2]Although the nature of any business discussion or activity need not be proved to establish the business purpose element in the case of a business meal under section 274(e)(1), the petitioner must show that the surrounding circumstances were conducive to a business discussion, and he has failed to produce such evidence. Rutz v. Commissioner, 66 T.C. 879, 884 (1976); see also Hughes v. Commissioner, 451 F. 2d 975, 978 (2d Cir. 1975), affg. a Memorandum Opinion of this Court. The petitioner testified to the effect that he also made a number of business gifts. Although we find the petitioner's testimony to be credible, the mere showing of an expenditure, without more, is insufficient under section 274 to prove that such cost was in fact a deductible business gift. See sec. 1.274-5(b)(5), Income Tax Regs.; Mathews v. Commissioner, 61 T.C. 12 (1973), *94 revd. on another issue 520 F. 2d 323 (5th Cir. 1975), cert. denied 424 U.S. 967 (1976); Ashby v. Commissioner, supra.[3]
We find it highly relevant that the petitioner showed us no convincing reason why adequate records were not maintained or sufficient corroborative evidence introduced at trial of these claimed expenditures. See Rutz v. Commissioner, 66 T.C. at 885; Gilman v. Commissioner, supra; see also Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1235 (1971). The petitioner had been audited before by the IRS, and at such audit, his business expenses had been challenged for a lack of proper substantiation. The petitioner admitted at trial that he had been told to keep a log of his expenditures. If the petitioner had heeded such advice, he would not be before us today on this issue. The petitioner's presentation of a "blizzard" of checks and receipts was, at best, a misapprehension of the specificity with which a taxpayer *95 must substantiate each expenditure under section 274(d). Dowell v. United States, 522 F. 2d 708, 714 (5th Cir. 1975), cert. denied 426 U.S. 920 (1976). Since the petitioner brought forth no witnesses or other corroboration in an attempt to buttress his testimony and exhibits as to the nature of his expenditures, we hold that he failed to meet his burden under section 274. Accordingly, he is denied any deduction for those travel, entertainment, meal, and gift expenses claimed for 1972, 1973, and 1974. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Compare Gee v. Commissioner, T.C. Memo. 1977-72↩.
3. See Bane v. Commissioner, T.C. Memo. 1971-31↩, where a similar "business gift" argument was advanced by the taxpayer.